UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTONIO HINTON,

       Plaintiff,

v.

Case No. 1:06-CV-772

Hon. Robert J. Jonker

MARK MCQUILLAN, *et al.*,

       Defendants.

                                    /

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is before the court on defendants' motion for summary judgment (docket no. 11).

**I.**    **Background**

Plaintiff's complaint contains arises from an incident that occurred at the Ionia Correctional Facility (ICF) on October 27, 2005. Plaintiff alleges that during the lunch period, he got into an argument with another inmate identified as Conley. Plaintiff alleges that after he knocked Conley to the floor "in self-defense," defendant resident unit officer Mark McQuillan grabbed plaintiff from behind. Comp. at ¶¶ 10-11. While McQuillan held plaintiff, Conley "stood up and begun to cut the [p]laintiff several times in the face and left arm area" with razor blades *Id.* at ¶¶ 12, 24. Three other corrections officers, defendants Paul Tunell,[1] Monica Hinton and Sergeant Beverly Scott stood and watched the assault. *Id.* at ¶ 13. Defendants did not attempt to disarm or restrain Conley. *Id.* at ¶ 15. As a result of Conley's attack, plaintiff "received permanent

---

[1] Plaintiff sometimes refers to this defendant as "Turnell."

disfigurement to the face," receiving "approximately 100 sutures and five to ten staples in the deeper lacerations." *Id.* at ¶ 14.

Plaintiff filed a four-count complaint on October 26, 2006. Count I alleges that defendant McQuillan violated plaintiff's Eighth Amendment rights under the state and federal constitutions, by holding plaintiff while Conley assaulted him with razor blades. Count II alleges that defendants Turnell, Hinton and Scott also violated plaintiff's Eighth Amendment rights under the state and federal constitutions when they failed to restrain Conley and to prevent Conley from assaulting plaintiff. Count III alleges that all four defendants violated plaintiff's Fourteenth Amendment "substantial [sic] Due Process Rights" under the state and federal constitutions. Finally, Count IV alleges that the four defendants violated plaintiff's Eighth Amendment rights under the state and federal constitutions to "Equal Protection" when they failed "to provide immediate protection from the other prisoner['s] assault on [plaintiff]."

This matter is now before the court on defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56(b).

**II.     Legal Standard**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Summary judgment is appropriate under Rule 56(b) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving parties version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, -- U.S. --, 127 S. Ct. 1774, 1776 (2007).

### III.    Plaintiff's Equal Protection claim

Defendants contend that plaintiff's Count IV fails to state a cause of action under the Equal Protection Clause. The court agrees. In order to maintain a Fourteenth Amendment equal protection claim, plaintiff must prove that he is a member in a protected class and that a state actor purposefully discriminated against him because of his class membership. *See Herron v. Harrison*, 203 F.3d 410, 417 (6th Cir. 2000). Plaintiff does not allege that he is a member of a protected class

or that any of the defendants discriminated against him. *See Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997) (inmates are not a protected class for equal protection purposes). Plaintiff must allege "more than mere conclusions" to state a civil rights claim. *Ana Leon T. v. Federal Reserve Bank of Chicago*, 823 F.2d 928, 930 (6th Cir. 1987). Here, plaintiff's claim that defendants violated his "Right to Equal Protection" because they failed "to provide immediate protection from the other prisoner" actually appears to be more in the nature of a claim under the Eighth Amendment.[2] *See* discussion in § V, *infra*. Accordingly, plaintiff's equal protection claim should be dismissed.

### IV. Substantive Due Process claim

Next, defendants contend that plaintiff's Count III, which alleges substantive due process violations under the 14th Amendment, is without merit. "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal quotes omitted). Plaintiff's claims that the officers treated him with deliberate indifference and failed to protect him are based upon the more particularized Eighth Amendment. *See* discussion in § V, *infra*. Accordingly, plaintiff's substantive due process claim should be dismissed.

---

[2] The court has a duty to read a *pro se* plaintiff's complaint indulgently. *See Haines v. Kerner*, 404 U.S. 519 (1972); *Kent v. Johnson*, 821 F.2d 1220, 1223-24 (6th Cir. 1987).

### V.      Plaintiff's Eighth Amendment claims

### A.      Unnecessary and wanton infliction of pain

In Count I, plaintiff alleges that defendant McQuillan "intentionally, knowingly, arbitrarily, and recklessly" violated his Eighth Amendment rights, and exhibited deliberate indifference as McQuillan held plaintiff during the assault. A convicted prisoner's claim of improper use of excessive force is to be raised exclusively under the Eighth Amendment's cruel and usual punishment clause. *See Cornwall v. Dahlberg*, 963 F.2d 912, 915-16 (6th Cir. 1992). In analyzing a prisoner's excessive force claim, the Court must examine whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *See Hudson v. McMillian*, 503 U.S. 1, 6; 112 S. Ct. 995 (1992). Courts evaluate the injury suffered, "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.*, 503 U.S. at 7, quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986). In the context of prisons, courts must give deference to actions prison guards take to maintain prison discipline, as long as those actions are taken pursuant to a considered choice and not in bad faith or for no legitimate purpose. *Whitley*, 475 U.S. at 321-22. Where the use of some force is required to restore order, it does not violate the Eighth Amendment unless the force used is "repugnant to the conscience of mankind" or the force is used "maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 9,10 (citations omitted). In short, "[not every] malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 9.

It is undisputed that plaintiff and Conley engaged in a fight and that plaintiff sustained serious injuries. Defendants Mark McQuillan, Paul Tunell, Beverly Scott and Monica

Hinton were present in the lunch hall and executed affidavits setting forth the following facts: Defendant McQuillan stated that he was standing several feet from the table where plaintiff and Conley were eating lunch. McQuillan Affidavit at ¶¶ 3-4, attached to defendants' brief as exh. 1. McQuillan saw them arguing, saw Conley place his finger on plaintiff's face and push it. *Id.* at ¶ 5. McQuillan walked over to the table and told them to stop it. *Id.* at ¶ 6. The two prisoner stood up and plaintiff struck Conley two or three times in the face. *Id.* at ¶ 7. McQuillan grabbed plaintiff and "pulled him over to the other side of the chow hall." *Id.* at ¶ 8. Conley charged at and tackled plaintiff. *Id.* at ¶ 9. McQuillan pulled Conley off of plaintiff, and saw plaintiff run out of the hall. *Id.* at ¶¶ 10-11. McQuillan could see that plaintiff was cut. *Id.* at ¶ 10. McQuillan and defendant Tunell struggled with Conley and placed handcuffs on him. *Id.* at ¶ 12. McQuillan suffered a laceration on his left hand and went to the hospital. *Id.* at ¶ 15. McQuillan denied that he held plaintiff or allowed Conley to assault plaintiff; rather, he "acted quickly" to pull Conley off of plaintiff and to restrain Conley. *Id.* at ¶ 17.

Defendant Tunell stated that plaintiff and Conley were arguing, that they started hitting each other with clenched fists, that plaintiff knocked Conley to the floor and that McQuillan pulled plaintiff away. Tunell Affidavit at ¶¶ 4-6 attached to defendants' brief as exh. 2. Conley charged after plaintiff, before defendants Sergeant Scott and Tunell could secure him. *Id.* at ¶ 7. Conley had razor blades and cut plaintiff several times before Tunell and McQuillan could separate the two prisoners and knock the weapon free. *Id.* at ¶ ¶ 8-9. Tunell secured the weapon for evidence. *Id.* at ¶ 10. Tunell denied that the officers stood and watched the assault, stating that "we acted as quickly as possible to this spontaneous assault." *Id.* at ¶ 12.

Defendant Sergeant Beverly Scott saw plaintiff hit Conley on the right side of the face and then the two prisoners began fighting each other. Scott Affidavit at ¶ 4, attached to defendants' brief as exh. 3. Scott called for assistance as Tunell and McQuillan separated the two prisoners. *Id.* at ¶¶ 5-6. Plaintiff "ran and got a trash can and threw it at Conley." *Id.* at ¶ 7. Scott gave plaintiff "several orders" to leave the area and followed plaintiff as he ran from the chow hall. *Id.* at ¶¶ 7, 9. Scott and defendant Hinton secured plaintiff until Health Care arrived. *Id.* at ¶ 10. Scott denied that McQuillan held plaintiff in order to allow Conley to assault him and that she did nothing more than "stand around and watch the assault." *Id.* at ¶ 12.

Defendant Monica Hinton saw plaintiff hit Conley on the right side of the face and then both prisoners began hitting each other. Hinton Affidavit at ¶ 4 attached to defendants' brief as exh. 4. She saw plaintiff get away from Conley through the back door of the chow hall leading to the yard. *Id.* at ¶ 5. Hinton secured plaintiff and called for Health Care. *Id.* at ¶ 6. Hinton stated that she "did not stand around doing nothing as the assault occurred." *Id.* at ¶ 8. Hinton also denied that McQuillan held plaintiff and allowed Conley to assault him. *Id.* at ¶ 9.

The officers prepared a lengthy critical incident report, which included major misconduct reports for plaintiff (fighting) and Conley (fighting and possession of a weapon). *See* critical incident report attached to defendants' brief as exh. 5. The critical incident report recounted the events as set forth in defendants' affidavits. *Id.* Both prisoners were transported to the hospital for treatment. *Id.*

Plaintiff was found guilty of the major misconduct of fighting. Major Misconduct Hearing Report, attachment "A" to exh. 5. At the hearing, plaintiff admitted that he hit Conley first. *Id.* The hearing officer found that "[w]hile it appears from the video and [plaintiff's] statement that

7

Conley knowingly provoked [plaintiff] and then replied with tremendously excessive force to [plaintiff], that does not change the fact that [plaintiff] struck the first blow when he could have retreated." *Id.* The hearing officer found that the prisoners engaged in "a mutual physical confrontation in anger." *Id.* The hearing officer summarized the video tape of the event as follows:[3]

> The tape begins at a tape time of 1125:51 showing prisoners eating chow in the 8unit, at 1129:27, a white arm strikes at a prisoner in blues and white shoes is sitting at a table on the left side of the screen and stands, the view of the rest of the table is obscured by a pillar. Staff walk towards the standing prisoner (the prisoner in blues), at 1130:36m and that prisoner sits down at 1130:40. After being seated that prisoner in blues recoils backward on his stool at 1130:42 while a prisoner in a white shirt moves at him. The prisoner in blues them goes after the other prisoner moving to the right, and he and the prisoner in white both go to the floor. At 1131:18 the prisoner in white leaves the area of the struggle. More staff members come on the scene, the prisoner in blues is taken from the area at 1133:21. At 1132:53 a close up of the area shows blood on the floor. The tape ends at 1136:31.

*Id.* (reproduced verbatim).

The hearing officer found Conley guilty of fighting and possessing a weapon. Major Misconduct Hearing Report, attachment "B" to exh. 5. The hearing officer rejected Conley's claim that an "unnamed person had the razor blades and cut Hinton." *Id.* The hearing officer reviewed the video tape and summarized its contents in the same manner as in plaintiff's report. *Id.*

In his affidavit opposing defendants' motion for summary judgment, plaintiff states: that Conley "put his right finger" in plaintiff's face and "pushed it;" that plaintiff "defended himself" by striking Conley and "knocking him to the floor;" that Conley reached into his pocket and ran towards plaintiff; that defendant McQuillan was standing behind plaintiff and held him; and that

---

[3] The hearing officer found that the video in this matters was confidential pursuant to M.C.L. § 791.252(h) because "to allow its actual viewing would reveal the limitations and capabilities of this fixed security device." Major Misconduct Report, attachment "A" to exh. 5.

8

Conley struck plaintiff with the razor. Hinton Affidavit at ¶¶ 7-15 (docket no. 23). Plaintiff further stated that Conley's attack would not have occurred if defendants had intervened. *Id.* at ¶ 15.

As an initial matter, plaintiff's affidavit, which declares that the "Foregoing is true and Correct to the best of my own personal knowledge, information and belief" is insufficient to create a genuine issue of material fact. Affidavits to support or oppose a motion for summary judgment "shall be made on personal knowledge." Fed. R. Civ. P. 56(e). "[S]tatements in affidavits that are based, in part, upon information and belief, cannot raise genuine issues of fact, and thus also cannot defeat a motion for summary judgment." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005). While plaintiff's affidavit recounts events that directly involved him, the affidavit recites a number of facts that were clearly not within his own personal knowledge (e.g., "the Defendants did nothing as the Video Tape would show," "[a]ffiant has several scars on his face and arms because of the defendants Scott, Tunell, Hinton, and McQuillan [sic] failure to prevent the assault when they had a chance," and "Defendants McQuillan, Hinton, Scott, and Tunell, did not intervene when they should have." Plaintiff's Affidavit at ¶¶ 8, 16, 20. "Affidavits composed of hearsay and opinion evidence do not satisfy Rule 56(e) and must be disregarded." *State Mutual Life Assurance Company v. Deer Creek Park*, 612 F.2d 259, 264 (6th Cir. 1979). *See, e.g., Mitchell v. Toledo Hospital*, 964 F.2d 577, 584-85 (6th Cir.1992) (statements contained in plaintiff's Rule 56(e) affidavit were "nothing more than rumors, conclusory allegations and subjective beliefs which are wholly insufficient to establish a claim of discrimination").

Even if the court were to accept plaintiff's affidavit as proper under Rule 56(e), it does not create a genuine issue of material fact in this case. Plaintiff's version of the events are blatantly contradicted by the extensive critical incident report, the hearing officer's findings in two

major misconduct hearings, and the evidence presented at the major misconduct hearings, including the video of the incident as described by the hearing officer. *See Scott*, 127 S. Ct. at 1776. *See also, Reist v. Orr*, No. 95-1128, 1995 WL 592041 at *2 (6th Cir. Oct. 5, 1995) (no genuine issue of material fact in excessive force claim, where it was "plaintiff's word against a barrage of unrefuted evidence in support of defendants' motion including medical evidence, the critical incident reports . . . and all documents and evidence presented at plaintiff's major misconduct hearings"). Plaintiff's cursory statements in his affidavit constitute the only evidence that defendant McQuillan held him for the purpose of allowing Conley's assault. These statements are collectively nothing more than a mere scintilla of evidence, *Copeland*, 57 F.3d at 478-79, which is utterly contradicted by the record and upon which a jury could not reasonably rely. *See, Scott*, 127 S. Ct. at 1776. Accordingly, defendants are entitled to summary judgment on the Eighth Amendment claim.

### B. Failure to protect

In Counts II and IV, plaintiff alleges that defendants failed to prevent Conley from assaulting him. A correctional officer observing an unlawful beating owes a prisoner a duty of protection under the Eighth Amendment. *See McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir.1990). An officer who fails to prevent the use of excessive force may be held liable when "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).

For the reasons stated above, plaintiff has not created a genuine issue of fact that defendants violated his Eighth Amendment rights by failing to protect him. It is undisputed that plaintiff and Conley engaged in a spontaneous fight in the lunch hall in which plaintiff struck first,

and that the four defendants acted to break up the fight, disarm Conley, secure both suspects, and seek medical attention. The conclusory statements in plaintiff's affidavit that defendants failed to protect him constitute at most a mere scintilla of evidence, *Copeland*, 57 F.3d at 478-79, which is contradicted by the record. Again, these conclusory statements are not ones upon which a jury could reasonably rely. *See, Scott*, 127 S. Ct. at 1776. Accordingly, defendants are entitled to summary judgment on this claim.

## V.  RECOMMENDATION

I respectfully recommend that defendants' motion for summary judgment (docket no. 11) be **GRANTED**.

Dated:  November 6, 2007                              /s/ Hugh W. Brenneman, Jr.
                                                     HUGH W. BRENNEMAN, JR.
                                                     United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).